IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD BALDWIN, an individual,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>AVIVA LIFE AND ANNUITY COMPANY and DOES 1 through 10,<br><br><div align="center">Defendants.</div> | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS BASED ON FORUM NON CONVENIENS**<br><br>Case No. 2:16-CV-202-DN<br><br>District Judge David Nuffer |

Plaintiff Richard Baldwin ("Baldwin") alleges three tort claims against Defendant Aviva Life and Annuity Company ("Aviva"): malicious prosecution, abuse of process, and interference with economic relations.[1] Baldwin's claims arise from Aviva reporting Baldwin to the Utah Department of Insurance, the insurance departments of other states, and the NAIC fraud database after Aviva terminated Baldwin's Independent Producer Contract ("Contract") for cause.[2]

Aviva seeks dismissal of Baldwin's claims for *forum non conveniens* arguing that the proper forum for the claims is the District Court of Polk County, Iowa, the forum selected in the parties' Contract.[3] Alternatively, Aviva seeks dismissal of Baldwin's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be

---

[1] Amended Complaint ¶¶ 25-39, <u>docket no. 24</u>, filed July 21, 2016.

[2] *Id*.

[3] Motion to Dismiss Plaintiff's Amended Complaint Based on Forum Non Conveniens and Failure to State a Claim ("Motion to Dismiss") at 1-2, <u>docket no. 25</u>, filed Aug. 24, 2016.

granted.[4] Baldwin opposes Aviva's Motion to Dismiss arguing that his tort claims are not governed by the Contract's forum-selection clause.[5]

Because Baldwin's claims fall within the scope of the Contract's forum-selection clause, and because Baldwin has failed to meet his burden of establishing that dismissal is unwarranted, Aviva's Motion to Dismiss[6] is GRANTED.

BACKGROUND ........................................................................................................... 3

DISCUSSION ............................................................................................................... 4

    Standard of Review .................................................................................................. 5

    The Contract's Forum-Selection Clause is Valid and Mandatory ............................ 7

    The Scope of the Contract's Forum-Selection Clause Encompasses Baldwin's Tort Claims .. 9

        Under Utah and Iowa Law, Baldwin's Tort Claims Fall Within the Scope of the Contract's Forum-Selection Clause .......................................................... 11

        Under Federal Common Law, Baldwin's Tort Claims Fall Within the Scope of the Contract's Forum-Selection Clause .......................................................... 16

    Dismissal of Baldwin's Tort Claims for *forum non conveniens* is Warranted ...................... 20

ORDER .......................................................................................................................... 25

---

[4] *Id.* at 2.

[5] Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint Based on Forum Non Conveniens and Failure to State a Claim ("Baldwin's Opposition"), docket no. 26, filed Sept. 20, 2016.

[6] Motion to Dismiss, docket no. 25, filed Aug. 24, 2016.

# BACKGROUND

This case arises out of the termination of the Contract between Baldwin and Aviva, and Aviva's subsequent reporting of Baldwin to various state and federal insurance departments. Baldwin, a resident of Utah, was an independent sales agent of Aviva, an insurance company with its principal place of business in West Des Moines, Iowa.[7] The parties' Contract contains a forum-selection clause and a choice-of-law provision.[8] These clauses state that Iowa law governs the Contract and that the "District Court of Polk County, Iowa shall have exclusive jurisdiction over any and all disputes which may arise with respect to this Contract, consent to such jurisdiction, and agree that proper venue exists therein."[9]

Based on allegations that certain insurance policies ("Insurance Policies") secured by Baldwin were no longer wanted by the insureds, were issued without the insureds' knowledge, and had forged signatures, Aviva sent Baldwin a letter, dated November 28, 2011 ("November Letter"), stating that it was terminating the Contract without cause.[10] In April 2012 Aviva sent Baldwin a letter ("April Letter") changing the termination status to "for cause" based on Aviva's investigation relating to the Insurance Policies.[11] The April Letter indicated that Baldwin was being terminated pursuant to Section 15 of the Contract, which states that termination "for cause" includes situations in which Baldwin subjects Aviva to liability, fails to comply with state or federal laws, rules, or regulations, breaches the Contract, commits fraud or misrepresents

---

[7] *Id*. at 4; Baldwin's Opposition at 1-3, docket no. 26, filed Sept. 20, 2016.

[8] Contract, docket no. 25-1, filed Aug. 24, 2016.

[9] *Id.* ¶ 21.

[10] Amended Complaint ¶¶ 6-7, 11, 15, docket no. 24, filed July 21, 2016; November Letter, docket no. 24-1, filed July 21, 2016.

[11] Amended Complaint ¶ 17, docket no. 24, filed July 21, 2016; April Letter, docket no. 24-2, filed July 21, 2016.

facts, or engages directly or indirectly in a rebating scheme.[12] According to the April Letter, Baldwin involvement with the Insurance Policies constituted engagement in a rebating scheme.[13]

Following Baldwin's termination for cause, Aviva reported Baldwin's alleged fraudulent activity to the Utah Department of Insurance, the insurance departments of other states, and the NAIC, a national fraud database that insurance companies check when hiring sales agents.[14] Aviva's reporting of Baldwin to the Utah Department of Insurance was required by Utah law because Baldwin's termination was for cause.[15] This reporting resulted in the initiation of criminal proceedings against Baldwin by the State of Utah for the alleged fraud.[16] However, the charges were eventually dismissed for lack of evidence.[17]

Baldwin alleges that Aviva's actions in reporting him have made it difficult for him to earn a living in the insurance industry and that he has suffered millions of dollars in damages.[18] As a result, Baldwin initiated this case against Aviva alleging claims of malicious prosecution, abuse of process, and interference with economic relations.[19]

## DISCUSSION

Aviva argues that this case must be dismissed because the Contract's forum-selection clause is mandatory; Baldwin's tort claims fall within the scope of the forum-selection clause; and public-interest factors under the doctrine of *forum non conveniens* weigh in favor of

---

[12] April Letter, docket no. 24-2, filed July 21, 2016.

[13] *Id.*

[14] Amended Complaint ¶¶ 18-19, docket no. 24, filed July 21, 2016.

[15] Utah Admin. Code R590-244-9(3) (2011).

[16] Amended Complaint ¶ 20, docket no. 24, filed July 21, 2016.

[17] *Id.*

[18] *Id.* ¶ 24.

[19] *Id.* ¶¶ 24-39.

dismissal.[20] Baldwin opposes the Motion to Dismiss arguing that his tort claims are independent from and do not relate to the Contract, and even if they did, the public-interest factors of the *forum non conveniens* analysis demonstrate that dismissal is unwarranted.[21] Baldwin does not contest the enforceability or validity of the Contract or its forum-selection and choice-of-law provisions.[22]

<center>**Standard of Review**</center>

The United States Supreme Court has held that a motion to dismiss for *forum non conveniens* is "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum," as opposed to a motion to transfer under 28 U.S.C. § 1404(a), which would apply to a contractual forum-selection clause pointing to a federal forum.[23] "And because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum."[24]

Under the balancing-of-interests standard, district courts typically "evaluate both the convenience of the parties and various public-interest considerations."[25] But when there is a valid forum-selection clause, "a district court should ordinarily transfer the case to the forum

---

[20] Motion to Dismiss at 7-15, docket no. 25, filed Aug. 24, 2016.

[21] Baldwin's Opposition at 3-11, docket no. 26, filed Sept. 20, 2016.

[22] Amended Complaint, docket no. 24, filed July 21, 2016; Baldwin's Opposition, docket no. 26, filed Sept. 20, 2016.

[23] *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568, 580, 583 n.8, 187 L. Ed. 2d 487 (2013).

[24] *Id.* at 580.

[25] *Id.* at 581.

specified in that clause."[26] "Only under extraordinary circumstances unrelated to the convenience of the parties should [the] motion be denied."[27] Essentially, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."[28]

For the valid forum-selection clause to be given controlling weight, the clause must be mandatory, not merely permissive.[29] A mandatory forum-selection clause is one that "contains clear language showing that jurisdiction is appropriate *only* in the designated forum."[30] A permissive forum-selection clause, on the other hand, is nonexclusive.[31]

After it is determined that a forum-selection clause is valid and mandatory, the balancing-of-interests standard changes in three ways. "First, the plaintiff's choice of forum merits no weight."[32] The plaintiff thus "bears the burden of establishing that transfer to the forum for which the parties bargained [or dismissal of the case] is unwarranted."[33] Second, the parties cannot "challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation," and the "private-interest factors [are deemed] to weigh entirely in favor of the preselected forum."[34] Because of this, the public-interest factors "will rarely defeat" a motion to dismiss for *forum non conveniens* and "the

---

[26] *Id.*

[27] *Id.*

[28] *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S. Ct. 2239, 2246, 101 L. Ed. 2d 22 (1988)).

[29] *Nelson v. Aramark Sports & Entm't Servs., LLC*, Case No. 2:14-CV-474-DN, 2015 WL 1014579, at *2 (D. Utah Mar. 9, 2015).

[30] *King v. PA Consulting Grp., Inc.*, 78 Fed. App'x 645, 647 (10th Cir. 2003) (quoting *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)).

[31] *Id.* at 648.

[32] *Atl. Marine Constr. Co.*, 134 S. Ct. at 581.

[33] *Id.*

[34] *Id.* at 582.

practical result is that forum-selection clauses should control except in unusual cases."[35] "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, [the motion to dismiss] will not carry with it the original venue's choice-of-law rules."[36] Rather, the choice-of-law rules from the forum selected in the parties' contract generally will govern the dispute.[37]

### The Contract's Forum-Selection Clause is Valid and Mandatory

Baldwin does not contest the validity or enforceability of the Contract's forum-selection clause.[38] Nevertheless, even if he did contest the clause, there are insufficient facts and evidence to "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."[39] Therefore, the Contract's forum-selection clause will be regarded as valid and enforceable.

The Contract's forum-selection clause is also undoubtedly mandatory. In *American Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, the Tenth Circuit Court of Appeals addressed whether a forum-selection clause was mandatory or permissive.[40] The forum-selection clause at issue stated that the parties "submit to the jurisdiction of the Courts of the State of Colorado and agree that the Courts of the State of Colorado/Arbitrator shall be the exclusive forum for the resolution of any disputes related to or arising out of this Term Agreement."[41] Before concluding

---

[35] *Id.*

[36] *Id.*

[37] *Id.* at 582-83.

[38] Amended Complaint, docket no. 24, filed July 21, 2016; Baldwin's Opposition, docket no. 26, filed Sept. 20, 2016.

[39] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513 (1972); *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014).

[40] *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926-27 (10th Cir. 2005).

[41] *Id.* at 924.

the clause was mandatory, the Tenth Circuit made clear that it had "adopted the majority rule for enforcing forum selection clauses."[42] This majority rule demands that "when venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory."[43] "Where only jurisdiction is specified, [courts] will nonetheless enforce a forum-selection clause if there is some additional language indicating the parties' intent to make venue exclusive."[44]

In applying the majority rule, the *American Soda, LLP* court focused on the forum-selection clause's language that the parties "consent[ed] to state court jurisdiction" and "select[ed] the state courts as the 'exclusive forum.'"[45] The *American Soda, LLP* court held that this language indicated the parties' "intent to make venue exclusive in state court with respect to any disputes not resolved in arbitration[.]"[46] Therefore, the forum-selection clause was mandatory.[47]

Here, the Contract's forum-selection clause states:

> [T]he parties to this Contract agree that the District Court of Polk County, Iowa shall have *exclusive* jurisdiction over any and all disputes which may arise with respect to this Contract, consent to such jurisdiction, and agree that proper venue exists therein.[48]

Like the forum-selection clause in *American Soda, LLP*, the Contract's forum-selection clause is mandatory because Baldwin and Aviva consented to jurisdiction in Iowa state court and agreed

---

[42] *Id.* at 927.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id*.

[47] *Id.*

[48] Contract, docket no. 25-1, filed Aug. 24, 2016 (emphasis added).

that the Iowa state court would have exclusive jurisdiction. The Contract's forum-selection clause also goes a step further by designating the particular county and tribunal: "District Court of Polk County, Iowa." Therefore, the Contract's forum-selection clause is mandatory.

**The Scope of the Contract's Forum-Selection Clause Encompasses Baldwin's Tort Claims**

Generally, after a forum-selection clause is determined to be mandatory, the public-interest factors of the *forum non conveniens* analysis are considered to determine whether dismissal is warranted.[49] But this is not the typical case because Baldwin and Aviva dispute whether Baldwin's tort claims fall within the scope of the Contract's forum-selection clause. To resolve this issue, it is necessary to first determine what law applies to the construction of the forum-selection clause's scope.

Baldwin contends that Iowa state law should apply because the Tenth Circuit in *Yavuz v. 61 MM, Ltd.* held that under federal law a court should apply the law chosen by the parties in their contract when interpreting a forum-selection clause in an international agreement.[50] However, despite professing to follow *Yavuz*, Baldwin does not cite any Iowa state court case that aids in the interpretation of the Contract's forum-selection clause, let alone whether his tort claims fall within the scope of the forum-selection clause.[51] The only Iowa state court case Baldwin points to is *Davenport Machine & Foundry Company v. Adolph Coors Company*,[52] but this case addressed whether a forum-selection clause could "deprive a court of jurisdiction that it otherwise ha[d],"[53] which is not the issue here. Baldwin instead points to federal cases from the

---

[49] *Chen v. U.S. Bank Nat'l Ass'n*, Case No. 2:15-CV-850-TS, 2016 WL 3747584, at *6-7 (D. Utah July 11, 2016).

[50] 576 F.3d 418, 427-28 (10th Cir. 2009).

[51] Baldwin's Opposition, docket no. 26, filed Sept. 20, 2016.

[52] 314 N.W.2d 432 (Iowa 1982).

[53] *Econ. Forms Corp. v. Norman Highway Constructors, Inc.*, 606 N.W.2d 297, 299 (Iowa 2000).

District of Iowa and the Eight Circuit that do not purport to apply Iowa state law, but rather apply federal common law.[54]

On the other hand, Aviva contends that Utah law should apply because of the general rule that "a federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules."[55] In Aviva's view, because Utah's choice-of-law rules require that procedural matters, such as forum-selection clauses, be interpreted under Utah law, the scope of the Contract's forum-selection clause must be governed by Utah law.[56]

This issue is unsettled in the Tenth Circuit. As one court explained, since "[f]orum-selection contracts adjudicated in federal courts implicate both state substantive law regarding contract interpretation and federal procedural law regarding judicial administration[,] … several courts have struggled with which law to apply."[57] Some district courts sitting in diversity have used the law of the forum in which they sit,[58] as suggested by *Boyd Rosene & Associates, Inc.*,[59] while others sitting in diversity have followed *Yavuz*[60] by applying the law of the forum selected

---

[54] Baldwin's Opposition at 5-6, 9, docket no. 26, filed Sept. 20, 2016 (citing *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 694-95 (8th Cir. 1997); *Witt v. Nation-Wide Horse Transp., Inc.*, Case No. 4:16-CV-108-RWP, 2016 WL 4033987, at *7-8 (S.D. Iowa July 25, 2016); *Jet Co. v. Thor Indus., Inc.*, Case No. C16-3005-MWB, 2016 WL 1642663, at *3-5 (N.D. Iowa Apr. 25, 2016); *High Plains Constr., Inc. v. Gay*, 831 F. Supp. 2d 1089, 1099-101 (S.D. Iowa Dec. 21, 2011); *Vessel Sys., Inc. v. Sambucks, LLC*, Case No. 05-CV-1028-LRR, 2007 WL 715773, at *7-9 (N.D. Iowa Mar. 6, 2007); *Beckley v. Auto Profit Masters, L.L.C.*, 266 F. Supp. 2d 1001, 1004-06 (S.D. Iowa June 3, 2003); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F. Supp. 1334, 1377-82 (N.D. Iowa Apr. 5, 1996), *aff'd*, 119 F.3d 688 (8th Cir. 1997)).

[55] *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997); *see also Atl. Marine Constr. Co.*, 134 S. Ct. at 582.

[56] Reply in Support of Motion to Dismiss Plaintiff's Amended Complaint Based on Forum Non Conveniens and Failure to State a Claim at 3-4, docket no. 28, filed October 7, 2016.

[57] *McKenna v. CDC Software, Inc.*, Case No. 08-CV-110-EWN-MEH, 2008 WL 4197740, at *5 (D. Colo. Sept. 9, 2008).

[58] *Marwell Corp. v. Marwell Corp.*, Case No. 2:15-CV-205-RJS, 2015 WL 4393289, at *2 (D. Utah July 14, 2015).

[59] 123 F.3d at 1352-53; *see also Atl. Marine Constr. Co.*, 134 S. Ct. at 582.

[60] 576 F.3d at 427-28.

in the parties' contract.[61] Still others have applied federal common law.[62] The Tenth Circuit Court of Appeals has not directly addressed this issue in the diversity context, and declined to do so on at least one occasion.[63] The only Tenth Circuit Court of Appeals case identified that may lend support for resolving the issue is *Jones v. KP&H LLC*, which applied *Yavuz* when interpreting a choice-of-venue clause, but *Jones* is a breach of contract case with no tort claims alleged and is an unpublished opinion.[64]

Despite leaning towards applying *Yavuz* in this case because of the general proposition that "when a court interprets a contract … it applies the law that the parties selected in their contract,"[65] resolving the question is unnecessary. Whether Utah, Iowa, or federal common law is applied to the Contract's forum-selection clause, the result is the same: Baldwin's tort claims fall within the scope of the Contract's forum-selection clause.

## Under Utah and Iowa Law, Baldwin's Tort Claims Fall Within the Scope of the Contract's Forum-Selection Clause

"The initial step in resolving the choice of law question is to determine whether a conflict exists between the law of the interested states."[66] "[T]he choice of law question has practical significance only if the application of one state's law would yield a different result than would the law of another state. If no differing result obtains, the court may apply the law of the forum."[67]

---

[61] *Electro-Mech. Corp. v. Riter Eng'g Co.*, No. 2:10-CV-975-TS, 2011 WL 2118704, at *2 (D. Utah May 25, 2011).

[62] *Mann v. Auto. Prot. Corp.*, 777 F. Supp.2d 1234, 1242-43 (D.N.M. Mar. 15, 2011).

[63] *Excell, Inc.*, 106 F.3d at 320; *cf. Cobank, ACB v. Reorganized Farmers Coop. Ass'n.*, 170 Fed. App'x 559, 567 (10th Cir. 2006).

[64] *Jones v. KP&H LLC*, 288 Fed. App'x 464, 468 (10th Cir. 2008) (unpublished).

[65] *Yavuz*, 465 F.3d at 427; *see also Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999).

[66] *Snyder v. Celsius Energy Co.*, 866 F. Supp. 1349, 1353 (D. Utah Jan. 10, 1994).

[67] *Id.* at 1353 n.9.

Under Utah law, the "purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract."[68] "In interpreting a contract, [Utah courts] look to the writing itself to ascertain the parties' intentions [from the plain meaning of the contractual language], and [they] consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none."[69] Implementing these general principles of contract interpretation and construction, the Utah Supreme Court has held that a contractual forum-selection clause can cover tort claims if the clause is "sufficiently broad."[70]

In contrast, it does not appear that Iowa state courts have specifically addressed whether tort claims can fall within the scope of a contractual forum-selection clause. However, Iowa state courts apply general principles of contract interpretation and construction when determining the meaning of contractual language and its legal effect, including the interpretation and construction of forum-selection clauses.[71] Thus, despite not having opined on this issue, Iowa state courts would likely determine that torts may fall under the scope of a forum-selection clause depending on the breadth of the clause's language, just as the Utah Supreme Court has done.[72] This conclusion is further supported by the result in the United States Supreme Court's opinion in *Carnival Cruise Lines, Inc. v. Shute*.[73] While not directly analyzing the circumstances under which a tort claim may fall within the scope of a contractual forum-selection clause, the Supreme Court concluded that a broadly worded forum-selection clause in a cruise ticket contract was

---

[68] *WebBank v. Am. General Annuity Serv. Corp.,* 2002 UT 88, ¶ 17, 54 P.3d 1139.

[69] *Id.* ¶ 18.

[70] *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2014 UT 13, ¶ 45, 325 P.3d 70.

[71] *Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435-36 (Iowa 2008); *Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Storage Tank Fund Bd.*, 586 N.W.2d 325, 329-34 (Iowa 1998); *Hotchkiss v. Int'l Profit Assocs., Inc.*, Case No. 09-1632-PJV, 2011 WL 1378926, at *2-3 (Iowa Ct. App. Apr. 13, 2011).

[72] *Energy Claims Ltd.*, 2014 UT 13, ¶ 45.

[73] 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991).

reasonable and enforceable against a passenger bringing a negligence action.[74] Therefore, no apparent conflict exists between Utah and Iowa law for determining the scope of the Contract's forum-selection clause, and Utah law need only be addressed.

In *Energy Claims Limited*, the Utah Supreme Court held that alleged torts of breach of fiduciary duty, conspiracy, and aiding and abetting breaches of fiduciary duty fell under the scope of a forum-selection clause.[75] The clause stated that "[a]ny dispute, controversy or claim arising out of or related to the agreement shall be brought exclusively before the courts of England [and] Wales."[76] The Utah Supreme Court reasoned that "the use of the term 'any,' does not support a distinction between tort or contract claims."[77] The court then concluded that the tort of breach of fiduciary duty "related to" the contract because it "[was] based on terms embodied in the [contract]."[78] Therefore, the Utah Supreme Court held that the torts "clearly 'relate to' the contract and f[e]ll within the broad category of 'any dispute, controversy or claim.'"[79]

Conversely, in the case of *Diversified Striping Systems, Inc. v. Kraus*, the Utah Court of Appeals held that alleged torts of fraud, tortious interference with existing or prospective economic advantage, and defamation did not fall within the scope of a forum-selection clause.[80] This was because the clause "applied only to 'action[s] or proceeding[s] seeking to interpret or

---

[74] *Id.*

[75] *Energy Claims Ltd.*, 2014 UT 13, ¶¶ 13, 45.

[76] *Id.* ¶ 12.

[77] *Id.* ¶ 45.

[78] *Id.*

[79] *Id.*

[80] 2014 UT App 287, ¶¶ 2, 5-6, 341 P.3d 932.

enforce the provisions' of the parties' agreement."[81] The court distinguished the clause from the clause in *Energy Claims Limited*, which was "much broader," and determined that "[t]he tort claims brought by Diversified d[id] not seek to interpret or enforce the provisions of the parties' agreement."[82] Thus, the specific language used in the forum-selection clause was paramount in the court determining that the clause's scope foreclosed its application to the tort claims.

In essence, Utah courts apply general principles of contract interpretation and construction to implement a two-part inquiry for determining whether a tort claim falls within the scope of a contractual forum-selection clause. First, the court determines from the plain language of the forum-selection clause whether the clause is sufficiently broad to include tort claims.[83] Second, the court looks to the plain language of the clause to determine whether the specific torts alleged are covered by the scope of the clause.[84]

The Contract's forum-selection clause in this case is sufficiently broad to include tort claims. The Contract states that "*any and all* disputes which may arise with respect to this Contract" are to be litigated in the "District Court of Polk County, Iowa."[85] Like the forum-selection clause in *Energy Claims Limited*, the Contract's forum-selection clause's use of "any and all" when modifying the term "disputes" does not support a distinction between tort or contract claims. Therefore, tort claims may fall within the Contract's forum-selection clause.

The specific torts Baldwin alleges against Aviva are also covered by the scope of the Contract's forum-selection clause. The Contract's use of the terms "with respect to" are

---

[81] *Id.* ¶ 6.

[82] *Id.*

[83] *Energy Claims Ltd.*, 2014 UT 13, ¶ 45.

[84] *Id.*

[85] Contract, docket no. 25-1, filed Aug. 24, 2016 (emphasis added).

substantially similar to the terms "related to" found in the forum-selection clause in *Energy Claims Limited*. The term "related" means "connected by reason of an established or discoverable relation."[86] The term "respect" means "a relation or reference to a particular thing or situation."[87] And more pointedly, "with respect to" means "with reference to" or "in relation to."[88] Given the plain meaning of these terms, there is no meaningful distinction between the Contract's use of "with respect to" and the "related to" language in the forum-selection clause in *Energy Claims Limited*.

In *Energy Claims Limited*, the tort of breach of fiduciary duty was covered by the forum-selection clause or "related to" the contract because it was based on terms embodied in the contract, *i.e.,* the parties' contractual obligations.[89] This is also the case here. Baldwin's tort claims of malicious prosecution, abuse of process, and interference with economic relations, at their core, arise with respect to the terms of Section 15 of the Contract.

Section 15 of the Contract states that Baldwin can be terminated "for cause" in situations in which he subjects Aviva to liability, fails to comply with state or federal laws, rules, or regulations, breaches the Contract, commits fraud or misrepresents fact, or engages directly or indirectly in a rebating scheme.[90] In other words, Section 15 obligated Baldwin to not engage in this type of conduct.

Aviva explained in its April Letter that Baldwin was terminated for cause because his involvement in an alleged rebating scheme violated Section 15 of the Contract.[91] Because

---

[86] *Merriam-Webster's Collegiate Dictionary* 1050 (11th ed. 2003).

[87] *Id.* at 1061.

[88] *Id.*

[89] *Energy Claims Ltd.*, 2014 UT 13, ¶ 45.

[90] Contract, docket no. 25-1, filed Aug. 24, 2016.

[91] April Letter, docket no. 24-2, filed July 21, 2016.

Baldwin was terminated for cause, Aviva was required by Utah law to report him to the Utah Department of Insurance.[92] Although also reporting Baldwin to the insurance departments of other states and to the NAIC fraud database, Aviva's reporting of Baldwin's alleged fraud led to the State of Utah filing criminal charges against Baldwin.[93] Aviva's reporting and the charges brought by the State of Utah form the basis for each of Baldwin's tort claims.[94] In other words, each of Baldwin's tort claims against Aviva arose in relation to Aviva's decision to terminate Baldwin for cause pursuant to Section 15 of the Contract. This is supported by the fact that Aviva did not report Baldwin after sending him the November Letter, which purported to terminate him without cause.[95] Therefore, because of the causal connection between the criminal charges underlying Baldwin's tort claims and Aviva's decision to terminate Baldwin's employment for cause pursuant to Section 15 of the Contract, Baldwin's tort claims "ar[o]se with respect to" the Contract and fall within the scope of the forum-selection clause under Utah and Iowa law. The same result also occurs under federal common law.

**Under Federal Common Law, Baldwin's Tort Claims Fall Within the Scope of the Contract's Forum-Selection Clause**

The federal common law test for determining whether a tort claim falls within the scope of a contractual forum-selection clause is significantly different than the Utah and Iowa approach of simply applying general principles of contract interpretation and construction. Nevertheless, the same result is reached under federal common law: Baldwin's tort claims fall within the scope of the Contract's forum-selection clause.

---

[92] Utah Admin. Code R590-244-9(3) (2011).

[93] Amended Complaint ¶ 20, docket no. 24, filed July 21, 2016.

[94] *Id*. ¶¶ 25-39.

[95] *Id*. ¶¶ 15-19; November Letter, docket no. 24-1, filed July 21, 2016.

Under federal common law, several factors are considered to determine whether tort claims are within the scope of a contract's forum-selection clause, including: (1) whether the parties intended tort claims to be governed by the forum-selection clause as reflected in the wording of the clause and the facts of the case;[96] (2) whether the "tort claims 'ultimately depend on the existence of a contractual relationship' between the parties[;]"[97] (3) "whether resolution of the [tort] claims relates to interpretation of the contract[;]"[98] or (4) whether the tort claims "involve[] the same operative facts as a parallel claim for breach of contract[.]"[99]

As to the first factor, Baldwin asserts that *Berrett v. Life Insurance Company of the Southwest*, controls the outcome of this case because of its factual similarity with this case.[100] The court in *Berrett* concluded, without citing authority, that "[w]hether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case."[101] The court concluded that torts of intentional interference with business relations, wrongful inducement to breach, and defamation did not fall within the scope of a forum-selection clause that required "any action at law or in equity hereunder" to "be brought in Dallas County, Texas."[102] The court held that the term "hereunder" was not broad enough to include the alleged torts.[103] The court also determined that

---

[96] *Berrett v. Life Ins. Co. of the Sw.*, 623 F. Supp. 946, 948-49 (D. Utah Dec. 4, 1985); *see also Cobank, ACB*, 170 Fed. App'x at 567.

[97] *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 694 (8th Cir. 1997) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983)).

[98] *Id.* (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)); *Mann*, 777 F.Supp.2d at 1243.

[99] *Id.* (citing *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993)); *see also Cobank, ACB*, 170 Fed. App'x at 567.

[100] Baldwin's Opposition at 6-8, docket no. 26, filed Sept. 20, 2016.

[101] 623 F. Supp. at 948-49.

[102] *Id.* at 947, 949.

[103] *Id.* at 949.

the alleged torts were "unrelated to the interpretation of the [contract]" and it was "highly

unlikely that in entering into the [contract] the parties contemplated that [the alleged] tort

claims … would be governed by the forum selection clause."[104]

However, many courts since *Berrett*, including one in this district, have determined that

there is no reason the term "hereunder" should not encompass tort claims.[105] "Reading the word

'hereunder' to apply only to a pure breach of contract claim between the parties would be unduly

crabbed and narrow."[106]

But even though the facts in *Berrett* are similar to this case, the Contract's forum-

selection clause does not use the term "hereunder" but uses the broader terms "with respect to."

This language is broad enough to include the tort claims Baldwin asserts.[107]

Moreover, the broad language "any and all disputes" within the Contract's forum-

selection clause does not support a distinction between tort or contract claims and indicates an

intent of the parties that tort claims would be governed by the forum-selection clause.[108]

Therefore, the parties' intent as reflected in the wording of the Contract's forum-selection

clause support Baldwin's tort claims falling within the scope of the forum-selection clause.

Under the second factor, Baldwin's tort claims ultimately depend on the existence of the

parties' contractual relationship. Aviva's reporting and the subsequent criminal charges that form

the basis for Baldwin's tort claims arose only as a result of Aviva's decision to terminate

---

[104] *Id.*

[105] *Stiles v. Bankers Healthcare Grp., Inc.*, 637 Fed. App'x 556, 559 (11th Cir. 2016); *Terra Int'l, Inc.*, 119 F.3d at 692-94; *CAO Grp., Inc. v. Fed.-Mogul Corp.*, No. 2:08-CV-682-DAK, 2009 WL 562287, at *2 (D. Utah Mar. 3, 2009).

[106] *CAO Grp., Inc.*, 2009 WL 562287, at *2 (citing *Picken v. Minuteman Press Int'l, Inc.*, 854 F. Supp. 909, 911 (N.D. Ga. Aug. 3, 1993)).

[107] *Supra* at 14-16.

[108] *Energy Claims Ltd.*, 2014 UT 13, ¶ 45.

Baldwin's employment for cause pursuant to Section 15 of the Contract.[109] Therefore, the dependency of Baldwin's tort claims on the parties' contractual relationship supports the finding that his tort claims fall within the scope of the Contract's forum-selection clause.

The third factor for consideration, however, does not support Baldwin's tort claims being subject to the Contract's forum-selection clause. Baldwin's tort claims do not depend on or relate to the Contract's interpretation, but rather, relate to or arise with respect to Aviva's termination of the Contract.[110]

Nevertheless, the fourth factor—whether the tort claims involve the same operative facts as a parallel breach of contract claim—supports that Baldwin's tort claims fall within the scope of the Contract's forum-selection clause. A parallel breach of contract claim alleging that Aviva improperly terminated the Contract for cause would rely upon the same operative facts as alleged in Baldwin's tort claims:

- Baldwin and Aviva entered a valid and enforceable contract;[111]

- Baldwin performed under the Contract;[112]

- Aviva breached the Contract by improperly terminating Baldwin for cause pursuant to Section 15 of the Contract because Baldwin was not involved in a rebating scheme;[113] and

- Baldwin suffered damages as a result of Aviva's breach, including foreseeable consequential damages arising from Aviva's legal duty to report the for cause termination to the Utah Department of Insurance.[114]

---

[109] *Supra* at 15-16.

[110] *Id*.

[111] Amended Complaint ¶ 15, docket no. 24, filed July 21, 2016.

[112] *Id*. ¶¶ 6-12.

[113] *Id*. ¶¶ 6-12, 15-17, 22-23.

[114] *Id*. ¶¶ 18-24.

Because the first, second, and fourth factors for consideration under federal common law each support Baldwin's tort claims falling within the scope of the Contract's forum-selection clause, Baldwin's tort claims are governed by the clause.[115] Therefore, because the same result is reached under Utah law, Iowa law, or federal common law, Baldwin's tort claims are governed by the Contract's forum-selection clause, and the *forum non conveniens* analysis is implemented to determine whether Baldwin's claims must be dismissed.[116]

### Dismissal of Baldwin's Tort Claims for *forum non conveniens* is Warranted

Baldwin bears the burden of proving that dismissal of his claims is unwarranted.[117] Because the Contract's forum-selection clause is mandatory,[118] the usual deference to the plaintiff's filing in this forum carries no weight,[119] and the private-interest factors weigh entirely in favor of dismissing his tort claims without prejudice to their refiling in the District Court of Polk County, Iowa.[120] Therefore, Baldwin must prove that dismissal of his claims is unwarranted based solely on the public-interest factors.[121] "The public interest factors include: (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with

---

[115] *Cf. Nelson v. Aramark Sports & Entm't Servs., LLC*, Case No. 2:14-CV-474-DN, 2015 WL 1014579, at *4 (D. Utah Mar. 9, 2015); *United States Welding, Inc. v. Tecsys, Inc.*, Case No. 14-CV-778-REB-MEH, 2014 WL 10321666, at *10 (D. Colo. Dec. 1, 2014); *Teran v. GB Int'l, S.P.A.*, 920 F. Supp. 2d 1176, 1184 (D. Kan. Jan. 29, 2013); *Mann*, 777 F. Supp. 2d at 1243.

[116] *Chen*, 2016 WL 3747584, at *6-7.

[117] *Atl. Marine Constr. Co.*, 134 S. Ct. at 581.

[118] *Supra* at 7-8.

[119] *Atl. Marine Constr. Co.*, 134 S. Ct. at 581.

[120] *Id.* at 582.

[121] *Id.*

the governing law."[122] Courts have also considered fairness and judicial economy as public-interest factors.[123]

Baldwin's argument regarding the *forum non conveniens* analysis relies heavily on key witnesses being located in Utah and that Iowa state courts do not have jurisdiction over these witnesses.[124] However, these assertions relate to private-interest considerations and, consequently, have no bearing on the resolution of Aviva's Motion to Dismiss.[125]

With respect to the first public-interest factor, Baldwin has not argued or alleged that administrative difficulties of the courts support the District of Utah retaining this case.[126] Therefore, Baldwin has not met his burden of proving that dismissal is unwarranted regarding this factor.

Regarding the second and third public-interest factors, jurors in both Utah and Iowa have a connection to the litigation and both states have an interest in deciding the controversy. Baldwin maintains that "[f]orcing him to bring his claims in Iowa would burden the citizens and judiciary of Iowa with the duty of deciding the validity of claims that are unrelated to their state based on testimony obtained in Utah."[127] Baldwin further asserts that his "claims are centered in Utah[;] Aviva caused criminal proceedings to be filed against [him] in Utah[;] and then, after performing the investigation Aviva eschewed, a Utah prosecutor dismissed the case in a Utah court."[128] However, Baldwin ignores that Aviva is an Iowa based company, made its

---

[122] *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998).

[123] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432, 127 S. Ct. 1184, 1192, 167 L. Ed. 2d 15 (2007).

[124] Baldwin's Opposition at 11, docket no. 26, filed Sept. 20, 2016.

[125] *Atl. Marine Constr. Co.*, 134 S. Ct. at 581-82.

[126] Baldwin's Opposition, docket no. 26, filed Sept. 20, 2016.

[127] *Id.* at 11.

[128] *Id.*

determination to terminate the Contract for cause in Iowa, and may have its own witnesses from Iowa.[129] As one court in this Circuit determined:

> [T]he burden of jury duty between citizens of [two states] is equal. Jurors in [one state] are connected to the litigation because that is where Defendants are located, and jurors in [the other state] are connected because Plaintiff's principal place of business is located in [that state].[130]

Therefore, because a connection to the controversy is readily apparent for Utah and Iowa and the burden of duty is the same for jurors from both states, Baldwin has not met his burden of proving that dismissal is unwarranted regarding the second and third public-interest factors.

The fourth public-interest factor also weighs in favor of dismissing Baldwin's claims. Because Baldwin's tort claims "arise with respect to" the Contract, and thus fall within the scope of the Contract's forum-selection clause,[131] the Contract's choice-of-law provision likely controls whether Utah or Iowa substantive law would apply to this litigation. The Contract's choice-of-law provision states that "[t]his Contract shall be governed by the laws of the State of Iowa."[132]Thus, Iowa substantive law would likely apply.

However, the United States Supreme Court in *Atlantic Marine Construction Company* gave less weight to this choice-of-law factor when the plaintiff filed the case in a forum that was not dictated by the contract's forum-selection clause. The court explained,

> [F]or the reasons we have explained, the transferee court would apply Virginia choice-of-law rules. It is true that even these Virginia rules may point to the contract law of Texas, as the State in which the contract was formed. But at minimum, the fact that the Virginia court will not be required to apply Texas choice-of-law rules

---

[129] Motion to Dismiss at 4, 14, underline docket no. 25, filed Aug. 24, 2016; April Letter, docket no. 24-2, filed July 21, 2016; November Letter, docket no. 24-1, filed July 21, 2016.

[130] *Envtl. Sales & Serv., Inc. v. Katch Kan USA, LLC*, Case No. 14-CV-118-F, 2014 WL 11498467, at *3 (D. Wyo. Aug. 8, 2014).

[131] *Supra* at 14-16.

[132] Contract, docket no. 25-1, filed Aug. 24, 2016.

reduces whatever weight the District Court might have given to the public-interest factor that looks to the familiarity of the transferee court with the applicable law.[133]

Similarly, Baldwin filed his case in Utah instead of Iowa, the forum chosen by the parties in the Contract. Therefore, the choice-of-law factor merits little weight even if the Iowa courts, after applying Iowa's choice-of-law rules, determined that Utah substantive law governs the parties' dispute.

In addition, the United States Supreme Court in *Atlantic Marine Construction Company* was not concerned that a federal district court sitting in Virginia might have to apply Texas law:

> And, in any event, federal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia.[134]

The Supreme Court's reasoning applies equally to Iowa state court judges. Iowa courts have adopted the "most significant relationship" test when determining what law should apply to a tort claim.[135] This means that when a tort claim is brought in Iowa state court, the Iowa state court judge determines what law governs the tort by determining which state "has the most significant relationship to the occurrence and the parties."[136] After adopting the "most significant relationship," Iowa state courts have applied the law of other states when adjudicating tort claims.[137] Further, if Iowa courts were to apply Utah law, Utah tort law does not have "arcane features" that would "defy comprehension" by Iowa state court judges.[138] Instead, Utah tort law,

---

[133] *Atl. Marine Constr. Co.*, 134 S. Ct. at 584.

[134] *Id.*

[135] *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987).

[136] *Id.* (quoting Restatement (Second) of Conflicts § 145(1)).

[137] *Zeman v. Canton State Bank*, 211 N.W.2d 346, 348-49 (Iowa 1973); *Zurn v. State Farm Mut. Auto. Ins. Co.*, 482 N.W.2d 923, 924 (Iowa 1992).

[138] *Atl. Marine Constr. Co.*, 134 S. Ct. at 584.

at least with regard to the torts of malicious prosecution, abuse of process, and interference with economic relations, is sufficiently similar to Iowa tort law.[139]

As to the last public-interest factors of fairness and judicial economy, Baldwin again has not met his burden. He does not make any argument or allegations regarding these factors,[140] except possibly with his reference to private-interest factors that have no bearing on the resolution of Aviva's Motion to Dismiss. Baldwin does not generally allege that having to refile his case in Iowa would be unfair or that judicial economy would be better served by keeping the case in the District of Utah.[141] Accordingly, these factors weigh in favor of dismissing Baldwin's claims.

Because Baldwin has failed to meet his burden of proving that dismissal is unwarranted under the public-interest factors, Baldwin has not shown that this is the "exceptional case[]" in which a forum-selection clause should not be given controlling weight.[142] Therefore, dismissal of Baldwin's claims for *forum non conveniens* is warranted. Because dismissal of Baldwin's claims for *forum non conveniens* is warranted, it is unnecessary to address Aviva's alternate argument for dismissal under Rule 12(b)(6) for failure to state a claim. Accordingly, Aviva's Motion to Dismiss[143] is GRANTED and Baldwin's claims are DISMISSED without prejudice to their refiling in the District Court of Polk County, Iowa.

---

[139] *Compare Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 643 (Iowa 1996), *and Fuller v. Local Union No. 106 of the United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 421-22 (Iowa 1997), *and Seneca Waste Sols., Inc. v. D & K Managing Consultants, LLC*, Case No. 13-1777, 2015 WL 567272, at *9 (Iowa Ct. App. Feb. 11, 2015), *with Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 843 (Utah Ct. App. 1987), *and Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶¶ 63, 65, 116 P.3d 323, *and Eldridge v. Johndrow*, 2015 UT 21, ¶¶ 13-14, 345 P.3d 553.

[140] Baldwin's Opposition, docket no. 26, filed Sept. 20, 2016.

[141] *Id.*

[142] *Atl. Marine Constr. Co.*, 134 S. Ct. at 581 (quoting *Stewart Org., Inc.*, 487 U.S. at 33).

[143] Motion to Dismiss, docket no. 25, filed Aug. 24, 2016.

## ORDER

IT IS HEREBY ORDERED that:

(1)     Aviva's Motion to Dismiss[144] is GRANTED; and

(2)     Baldwin's claims are DISMISSED without prejudice to their refiling in the

District Court of Polk County, Iowa.

The Clerk is directed to close the case.

Signed February 23, 2017.

BY THE COURT

District Judge David Nuffer

---

[144] *Id.*